COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

August 8, 2016

Dean A. Campbell, Esq.
401 North Bedford Street
PO Box 568
Georgetown, DE 19947

David N. Rutt, Esquire
Moore & Rutt, P.A.
122 West Market Street
P.O. Box 554
Georgetown, DE 19947

      RE:   John Haldeman, v. Marjorie Lee Worrell et al.
             C.A. No. 8282-MA

Dear Counsel:

I have reviewed Plaintiff John Haldeman's Motion to Re-Open Record filed on July 13, 2016,[1] and the response of Defendants Marjorie Lee Worrell and the Estate of Marjorie L. Tyson, by and through its Executrix, Marjorie L. Worrell, filed on July 26, 2016.[2] For the reasons that follow, I recommend that the motion be denied.

---

[1] Docket Item ("DI") 66.
[2] DI 69.

Plaintiff seeks to re-open the record of this case to admit copies of (a) a letter allegedly written by Paul D. Nelson, an attorney in Media, Pennsylvania, concerning a telephone conversation that took place on February 19, 2016 with Plaintiff's attorney, (b) three checks allegedly signed by Mrs. Tyson in 2007 and 2008 and provided to Mr. Nelson by Mid-Atlantic Bank, and (c) two pages of handwritten notes allegedly provided to Mr. Nelson by Mrs. Tyson listing loans or monetary gifts to her stepson Johnnie Ray Tyson, Jr. from April 2, 1993 to June 27, 2008, and a schedule of Johnnie Ray's repayments of a $9,600 loan during 2002 and 2003.[3]  Plaintiff would like an opportunity to explain that he had no knowledge of the depth of Johnnie Ray's relationship with Mrs. Tyson or of these loans and gifts.  Defendants oppose this motion, arguing that the relationship between Mrs. Tyson and her stepson is irrelevant to the issues before the Court. Furthermore, Defendants argue that the checks are not newly discovered evidence because they were faxed to Nelson in May 2010, two months prior to Nelson's written correspondence with Plaintiff.[4]  These documents were in existence and, therefore, available to Plaintiff prior to trial had he wished to introduce them into the record.

---

[3] Motion to Re-Open Record, Ex. A.  DI 66.
[4] *See* Letter dated July 28, 2010 from Paul D. Nelson, Esq. to Marjorie Tyson and John Haldeman, Attorney-in Fact.  JX 9.

There has been no final judgment in this case because the Court is conducting a *de novo* review of a Master's Final Report.[5] Plaintiff had the opportunity to fully and completely present his evidence during the course of a three-day trial and to make his arguments in post-trial briefings before a Master. Nevertheless, this Court will reopen the evidentiary record before entry of a final judgment when "'doing so serves the interest of fairness and substantial justice.'"[6] The factors to consider when deciding whether to grant a motion to reopen include:

> (1) whether the evidence has come to the moving party's knowledge since the trial; (2) whether the exercise of reasonable diligence would have caused the moving party to discover the evidence for use at trial; (3) whether the evidence is so material and relevant that it will likely change the outcome; (4) whether the evidence is material and not merely cumulative; (5) whether the moving party has made a timely motion; (6) whether undue prejudice will inure to the nonmoving party; and (7) considerations of judicial economy.[7]

I conclude that it would not serve the interests of fairness or justice to allow Plaintiff to supplement the record. The relationship between Mrs. Tyson and her stepson was incidental to the issues before me. That Mrs. Tyson had enjoyed a close relationship with her stepson despite the circumstances of his birth merely provided additional factual support for my characterization of Mrs. Tyson as a generous and warm-hearted person. At issue was whether Plaintiff could void

---

[5] *See* Court of Chancery Rule 144(a).

[6] *Whittington v. Dragon Group, LLC*, 2012 WL 3089861, at *3 (Del. Ch. July 20, 2012) (quoting *Lola Cars Int'l Ltd. v. Krohn Racing, LLC,* 2010 WL 1818907, at *1 (Del. Ch. Apr. 23, 2010)).

Mrs. Tyson's estate planning documents, i.e., Mrs. Tyson's 2012 Last Will and Testament leaving her estate to her niece Defendant Worrell and the 2012 Assignment of Lease conveying Mrs. Tyson's one-half interest in the Lewes Beach house to Defendant Worrell. Plaintiff argued that he was entitled to rescission of these documents due to fraud, misrepresentation, and undue influence by Defendant Worrell, lack of testamentary capacity and the capacity to execute a deed, and equitable estoppel. Defendants, on the other hand, accused Plaintiff of breaching his fiduciary duty to Mrs. Tyson. My recommendation to deny Plaintiff's requested relief was based primarily on financial records from 2011 to 2012 and eyewitness testimony concerning Mrs. Tyson's life after she was moved to Lewes in August 2011. My recommendation to order an accounting from Plaintiff was predicated on, among other factors, Plaintiff being listed as a power of attorney on Mrs. Tyson's credit union accounts, his commingling of his own funds with Mrs. Tyson's funds, and his failure to keep adequate records of Mrs. Tyson's bills and his use of Mrs. Tyson's funds.

The record shows that sometime in 2007 or 2008, Plaintiff's son moved into Mrs. Tyson's Boothwyn residence, ostensibly for the purpose of helping to care for his great-aunt, who had Parkinson's disease and was undergoing medical treatment for cancer. From approximately 2008 until August 2011 when she was moved to

---

[7] *Id.* (footnotes omitted).

Lewes Beach, Mrs. Tyson's world appeared to consist of Plaintiff, Plaintiff's adult son and daughter, Mrs. Tyson's cleaning lady and handyman, and Pennsylvania hospice workers. Although Plaintiff now claims that Johnnie Ray lived near Mrs. Tyson during this time period, and presumably had access both to his stepmother and her ATM card, this is pure speculation on his part. On the other hand, the record is clear that not only did Plaintiff's son reside with Mrs. Tyson, but Plaintiff himself drove from Millsboro, Delaware to Boothwyn, Pennsylvania every two weeks to visit Mrs. Tyson. Even if I were to reopen the record to include the three checks and list of loans and gifts to Johnnie Ray from Mr. Tyson and/or Mrs. Tyson, this evidence is not so material and relevant that it would likely change the outcome of the Master's Final Report, which dealt with the relationship between Mrs. Tyson and Plaintiff, who was her nephew and her power of attorney.[8]

Furthermore, it appears that Plaintiff may have been aware of this evidence for some time. Although Nelson's letter is dated February 22, 2016,[9] in it, Nelson refers to two pages that had been given to him by Mrs. Tyson. Since Mrs. Tyson was moved to Lewes Beach in August 2011, Nelson must have obtained these pages from Mrs. Tyson sometime before then. Nelson may even have obtained the pages in 2010 when he was engaged by Plaintiff and Mrs. Tyson to obtain a

---

[8] I do note, however, that the checks dated 2007 and 2008 might be relevant to an accounting if the Court adopts the recommendations in the Master's Final Report.

title search of the Boothwyn residence and investigate Johnnie Ray's alleged misrepresentation and trickery that led to the Boothwyn residence being titled in Johnnie Ray's sole name. In addition, the copies of three checks which Plaintiff seeks to admit appear to have been printed in May and October 2010, and faxed to Nelson by Mid-Atlantic Bank on October 28, 2010, three months after Plaintiff's telephone communication with Nelson.[10] Even if Plaintiff was unaware of the existence of these documents prior to trial, he could have discovered them with the exercise of reasonable diligence.

Trial in this matter took place over several days in March 2015.[11] The Master's Draft Report was issued on December 31, 2015.[12] Plaintiff apparently obtained these documents from Nelson in late February 2016. Plaintiff fails to provide any reason for waiting to file this motion until after the issuance of the Master's Final Report on June 16, 2016.[13] Although the analysis and recommendation would not have been different if Plaintiff had filed his motion sooner, at least it would have avoided any disruption to the process of taking exception to a Master's Final Report, which has been stayed during the pendency

---

[9] Motion to Re-Open Record, Ex. A (Letter to Dean Campbell, Esq. dated February 22, 2016). Docket Item ("DI") 66.
[10] *See* JX 9.
[11] DI 38.
[12] DI 51.
[13] DI 58.

of this motion.[14]   As it stands, judicial economy has not been served by this process, and would not be served by re-opening the record to explore irrelevant matters concerning the relationship between Mrs. Tyson and her stepson.

In the interest of moving this case along, I am waiving a draft report and issuing my recommendation to deny the motion to reopen the record as a Master's Final Report.   The parties are referred to Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz

---

[14] DI 70.